Case number 26-5009, Mark Zaid's Esquire v. Executive Office of the President et al. Appellants, Mr. Combley for the appellants and Mr. Lowe for the appellant. Good morning again, Mr. Combley. Good morning, long time no see. Yes, please proceed when you're ready. Thank you, Your Honor. May it please the Court, I'll be Zaid Combley on behalf of all defendants and I'll reserve five minutes for a rebuttal. So plaintiff in this case is asking to grant relief that no circuit court, including this one, has ever granted, which was effectively restoring a security clearance after the President determined that it should be revoked. Plaintiff tries to get around this by referring to a security clearance revocation as a method, policy, or procedure, but a merits determination from the President that an individual should not have access to security clearance is none of those things. Realizing this, plaintiff also grasps that straw by saying that because the revocation was accomplished by the President, rather than an agency expert, or because the presidential memorandum uses the term national interest rather than national security, it somehow becomes reviewable. None of those arguments have merit. And in this case, we also do believe that we would succeed on the merits of the First Amendment retaliation due process, and the Fifth Amendment right to counsel claim. So when we talk about the plaintiff's first argument that it gears towards the methods that was used, I don't think you can describe the presidential memorandum as a method. It's just saying the following individuals should not have access to classified information and list the plaintiff as one of them. When you think of method, you're thinking of something like Greenberg where you're challenging the question on the security form or something like that. Here, I don't think there's any real argument that it was a merits based determination by the President. Now, nor could it be said that it's a policy. Policy implies a broad set of generally applicable rules that apply beyond security clearance determinations itself. Here, this presidential memorandum wasn't saying some broad policy. It just said a number of individuals, including Mr. Zaid, should not have access to security clearances. Now, to the extent that they're talking about some sprawling policy beyond that, that doesn't meet that definition either. Because if the ultimate injury arrives from the revocation itself and challenges the substantive basis, then you have to look at whether the President had good enough reasons to revoke Mr. Zaid's security clearance. And that is what the question that Lee and Garland, excuse me, Egan said is off limits. And then the procedural, the argument that they're challenging the process rather than the substantive determination or lack thereof. We believe that that's foreclosed by Ryan versus Reno, which held that you can't frame the denial of a security clearance as a challenge to the process. And Lee obviously expanded that process, that framework to constitutional arguments. Nor is it very meritorious to say that the political question doctrine, which revolved around the President's, for Article II powers to decide who gets to be classified information turns on whether it was a certain type of review done by an agency versus the President himself. That kind of analysis would flip Article II on its head. On that question, what are we to make of the statute 50 U.S.C. 3341 B.1, which requires the President to select a single department, agency, or element of the executive branch to be responsible for directing day-to-day oversight of investigations and adjudications for personnel security clearances, including for highly sensitive programs throughout the United States. Does this mean that the President is not authorized to make those determinations himself unilaterally? No, Your Honor, I don't take that to mean Congress is circumcising the President's authority to make that decision himself. And then Rattigan, which is a case we didn't discuss earlier but came up in plaintiff's briefs, it does not apply here either because those claims were about persons that were outside of the security clearance review process. There's no argument that the President is not one of the ones that is inside the determination process and made the ultimate call here. And then we raised the point in the last argument, but I'll raise it again. The fact that it said national interests versus national security, that's something that every executive order has said, and so it doesn't turn on kind of one of those two. So can I ask a question about that? If this case is at least sets up a little bit differently because the only determination at issue is a security clearance determination. Yes. And is it your – when you say that there was a merits determination made by the President about national security, then is the way you're coming at that to say that any time there's a determination that's about a security clearance, it's necessarily a national security determination? It's about a security clearance and only a security clearance. Is it necessarily a national security determination because of the context, or are you saying no, that this was actually a national security determination based on traditional national security considerations that attend the grant or denial of a security clearance? So, Your Honor, our argument would be the same as the argument that I made, is that the reviewability doesn't turn on how the President came to the decision. So I just went right past reviewability. Because in this case, you also have a substantive defense.  And I'm just asking, in the way you're characterizing the substantive defense, which goes to the grounds on which the President rested the security clearance determination here, is your point that it's necessarily a national security determination because it has to do with the denial of a security clearance? Or is your point that, no, it's more than that, that it was actually the kind of national security determination that is typically made when a security clearance is granted or denied? So, Your Honor, I'm not saying that it's necessarily followed a particular procedure that past cases have done. My point being that when you look at what a security clearance determination is, it's an affirmative finding that someone meets the character and a whole bunch of other attributes to gain access to classified information. But in here, the President ultimately just concluded that he does not believe that Mr. Zaid should have access to classified information, and that's the merits determination that's being challenged. So the district court made an explicit factual finding that there wasn't any review, individually, of the national security risks posed by Mr. Zaid. And so there's no, you know, individualized national security review, whether 13 factors or some other basis. And you have not argued that that finding was clear error? No, Your Honor, we're saying that that finding is irrelevant because it doesn't, like when you're talking about individualized, it really depends on what you mean. Like if individualized means you name the person, then obviously you've met that. But if individualized is talking about some type of process behind that, we believe that that's also non-justiciable and that claim is foreclosed by Ryan versus Reno. You can't reframe a merits-based determination on a security clearance as one about process and still in order to make it justiciable. But why doesn't that matter if you get past, and I know you've got a justiciability argument, and take that seriously, but if you get past justiciability, and then you're talking about the merits of the claim, then why isn't the distinction that Judge Pillard asked you about salient? So, Your Honor, yes, we do agree that it depends on which claim you're talking about, because for First Amendment retaliation, for instance, there is still the before causation requirement. And here it's a little bit different because this isn't the law from EOS, which had a lot of other facts that were listed in there. It is just a plain statement saying that, you know, I believe that his clearance should be suspended, and that might matter for the due process requirement in terms of that claim. But in terms of the First Amendment retaliation, the order on itself is facially neutral, and Mr. Zaid is going back seven years or so to talk about comments that the President made about him. And even in the context of those comments, it's questionable how much value they have. But given that the face of the presidential memorandum is neutral, I don't see that being particularly relevant. But what about the district court finding? So the district court finding is also another issue, because if we're piercing behind the motives and whether the President did a good enough review or whether it was a pretext, that is the type of question that we bar. But if you pass justiciability and you're on the substantive merits, then on the First Amendment issue, if the district court finding is in place and you haven't asked for it to be set aside, then where are we? So, Your Honor, then they would have to meet the three factors for First Amendment retaliation. And given that the face of the memorandum is neutral and the comments that the plaintiff cites are from a number of years ago, we would have to demonstrate that he would have issued it just based on the fact that he didn't trust Mr. Zaid with national security information. And to that, we believe that we would win on the merits. Mr. Conley, is there a Mississippi v. Johnson problem in this case, which makes it the President has made an individual determination and then is enjoined from making that determination? Yes, we do believe that that's also a problem in terms of... Did you, I don't, the government didn't argue that, though? No, we do believe that that, to the extent that it goes towards looking behind the veil of why the President made the decision, but we didn't argue that specific thing. So, back to, you were saying that when I was asking you about the district court's findings, you were saying, well, they're arguing about the process, but the district court found that the summary revocation of Zaid's security clearance was not based on any national security interest. Which is not, it's, I mean, I take that to be relevant to our determination, which is harder here than in the pardon context, that we're trying to determine whether the President has invoked his Article 2 national security authorities. We do have a little more, you know, work that we have to do before we get to your nondisciplinary argument. I take one of your arguments to be, no, not really, because if it's a security clearance determination, that is an exercise of national security judgment. Okay, I hear that argument. We have to take it seriously. But if we reject that argument. And we say there may be certain security clearance determinations that, although they are in the form of revoking security clearance, are not based. And that the President has disavowed or failed to claim anything, or a district court has found as a matter of fact, and there's no clearly wrongness challenge, that it is not based on any national security interest. Why isn't that something that puts us outside of the jurisdictional bar? Yes, Your Honor, because Lee is not limited to, obviously, my first point about, and then also defund that matters, what security clearance determinations are. They're not saying a negative thing that you're a national security threat. It's saying that you don't meet the positive characteristics to be trusted with classified information. So we believe that the district court was asking the wrong question. Here's somebody who's had national security access to classified documents for 30 years. The only thing that's been pointed to is nothing concrete to have to do with his management of classified documents and the district court finds that it wasn't actually based on any national security interest. So I'm not sure that the plaintiff has to show, you know, that they would get a security clearance. No, he has had a security clearance. So Your Honor, we believe that that's more of a merits question rather than just disability because if the access to classified information generally is within the national security realm, and the President has been exclusively exercising or excuse me the executive branch has been exclusively exercising that power for over 100 years and not circumscribed by Congress. So the disability question turns on whether it's about access to classified, it's about who gets access to classified information. If the President said, I know I have control over security clearances, which are about access to classified information. Here's a lawyer who I don't like some of the people he's represented I think are scum and therefore because he's their counsel. He's scum. And if he doesn't pay me $1 million. I'm going to deny him the security clearance. The guy doesn't pay him $1 million. The President denies the security clearance, and the President says that's the only reason I know the guys had it and if he went through the process he probably could get it again. But I'm the head of national security. No, no just disability. So Your Honor, we believe that it would be one of the other three ways that I mentioned earlier that would result that would have to address the issues such as Congress, passing a statute, the impeachment power of Congress, or the election, or the election. So we don't believe that that you just just disability turns on that and this has been a problem that's been addressed in every single case so Lee had the title seven Chinese ancestry equal protection are the argument, and it's still said not just disabled so it's not the first time that the court had to introduce that to confront these issues, and the answer still remains the same, whether it's one person or group of people. Well, so we need to, we need to think about Lee. In a way that's harmonious withdrawals. Yes. And so at least enrolls it, it sets up very similarly because the court drew a distinction in a similar context between the non review ability of the ultimate decision and review ability as to the process leading to that decision. And it was also a political question issue and the court said the political question doctrine didn't stand in the way, and therefore will consider the procedural due process claim we're not going to do the procedural due process non justiciable, and then went on and talked about whether the scope of process was sufficient. So why, why wouldn't that same kind of rubric apply here to with respect to at least the procedural due process part of the case. Yes, Your Honor, because it was one, you know, we believe that the cases that plaintiff cited we're talking about statutory review bars from Congress rather than a textual commitment to the President, based on the Constitution to when you look at those cases, you have to also harmonious, you also have to marry them to Ryan versus Reno and palmy area. So, just, just, I just want to make sure I understand the first point because on the first point. Rawls did consider whether there was a political question. Yes. So why wouldn't wasn't that already the textual commitment was already taken into account as part of the book, it was on the. Yes, but it was in the context of a statutory bar it wasn't in the context of something like security clearances, which this court has said is textually committed to the President, and where Congress has not circumscribed that power. And then to, it still has to be married with Ryan versus Reno and palmy area palmy area talked about Ryan versus Reno talked about how you can't reframe the substantive decision as a procedural one, in order to avoid the Egan bar, and then to palmy area, they did involve a procedural due process claim that, you know, at that time, the court said it was a frivolous one so they didn't need to consider the substance of it but judge taxes and his concurring opinion said we need to address this issue at some point for a non frivolous claim, and that came in lead, which also had a sub substantive due process claim but I don't think it really makes sense to separate substantive versus procedural because procedure isn't procedure for its own sake, there has to be something substantive that underlies it you do understand the due process question and Rawls to, I mean I'm sorry in lead to have been a substantive due process. Yes. Yeah. And, but I don't think I don't think you wouldn't draw a distinction but but yeah but i i that's how I understood it too but I want to make sure you agree. It's been a long morning so I'm sure you've been clear but it would help me if you just go back over enrolls. You talked about one differences that there was congressional statute but wasn't didn't the court determined that it wasn't clear that Congress intended to foreclose review. Yes, and therefore, political question doctrine doesn't prevent the court from looking at a due process claim and whether the process given comports with due process but it was a presidential order right that deprived the plaintiff of property and the president on your article to theory, could just say, you know, sure, Congress didn't foreclose review but I want to foreclose review, I am the king of national security. And I don't think processes needed here why isn't that why doesn't that same result. Following Ross, if you're right about the nature of the commitment of national security determinations to the president gifts because your honor it's dealing with separate documents submitted by the Constitution to the president that Congress has not circumscribed. Those are, those are actual commitment is the same text, not necessarily submitting a national security determination that's at the heart, both of the CFS determination in Rawls and at the heart of security clearance determination, in our case, so your honor that goes back to my original point which is you still have to marry it with a security clearance context with Brian versus Reno palmieri and Lee and read them all together. And when you read them all together, it would be odd to say that there is, you don't have a property interest in your security clearance, but at the same time you have a procedural due process claim in regards to that because processes and process for its own sake and then versus Reno says, you can't rebrand corporation in Rawls doesn't have a property interest in being deemed to not be a national security risk they have a property interest in a contract and so to Mr. Lee has a property interest or has a liberty interest in serving his clients in not being barred What is it in card save not being barred from a category of future work, based on the government's action and they would be barred from a category of future work. So your honor to that I would have to say that in the security clearance context, Lee says that even constitutional claims that didn't make a carve out for procedural due process. It still says that that's still not just dishevel is the answer is because if you're looking at the process then you also have to look at whether the determination was ultimately good enough because you have to have a good enough process to lead to that determination So, if you ultimately have to examine the President's motives in the end, and you have to examine his motives in order to determine whether the process given was good enough. If you think that for instance, he engaged in First Amendment retaliation by not giving the process so I don't think that that distinction is anything but illusory in this case. And I didn't want to talk about the substance of the due process claim a little bit while we're at that I'm sure that that distinction works for me I mean in in Rawls, we said that there, the government argued that there was no property interest because Rawls knowingly entered into this contract, knowing that it was contingent on a serious approval. And so no, you know, no property interest there because it's contingent well that argument was rejected there and why wouldn't the same argument be rejected. In the case, because Lee already says that in the context of security clearances which Congress has not circumscribed the authority of the President in that area that all claims that are constitutional are foreclosed, and then you had Palmieri before that, which one can really say that I didn't get enough process so that's what I'm challenging, and especially here, I think the dividing line is also what remedy they're seeking. So for instance, if the remedy that they're seeking is restoration of security clearances, and that's not really a procedural due process claim that's a merit based determination, and that's what the plaintiff was asking for here. So I think that if to the extent that there is any difference between process and procedure, it can be disposed of based on the remedy that the well I think it's that the claim is just that you don't get to take away my security clearance until I get fair process. Yes, Your Honor, but the end result was revocation of the presidential memorandum that took away his clearance so that's what and the relief that they were asking for was in j 39 saying rescind defendants revocation of a security clearance so he wasn't saying that, you know, give me more process he was saying, restore my security clearance that's the relief that I think it makes it a tough fit to make it just as well. Mr. Colby is they'd also requested. I mean he requested reinstatement of his clearance but also requested the government to provide appropriate process do you think that would have been a remedy that the district court could order, not under Lee Your Honor because we did just say that. If it's about your security clearance. It's just not reviewable, and there are other contexts which talks about how process is not process for its own sake there still has to be something underlying it. So if the issue was you didn't get process for your security clearance I don't think it would create a way to creatively plea around Lee which I don't think was intended by Lee at all, but Lee was set to answer all the questions, especially given past cases did bring up the issue of procedural due process to. So all remedies are foreclosed, not just the yes Your Honor very substantial remedy of reinstating a security grant. Yes, Your Honor and there's, you know, there's out of circuit precedent that says differently on that issue and I understand that but within the DC circuit. We do believe that Lee forecloses even a procedural remedy, especially when you understand that Ryan versus Reno which was also cited with Lee within the also had that, which is you never get to remedy because it's not justiciable. Yes, Your Honor. That's the, that's the position. Yes, Your Honor, but the remedy but the remedy sought and the remedy given can give a window into what the piece is actually about, and to determine whether it's justiciable or not, because the dividing line is, is the injury they're seeking is the injury that they suffered tied to the clearance determination, and are they asking to restore their clearance so if even if they weren't asking for their clearance to be restored. If their injury was tied to the lack of clearance, that's also another issue. That's the reason for emphasizing what the remedy, in fact, was. Yes. Yes, so I see that I'm way over my time limit, but I just wanted to quickly touch upon the merits of both the due process as well as the right to counsel before I step down. Yeah, when you do that ticket just take a minute and do it efficiently. Yes. So, there is no liberty interest behind the security clearance because the ultimate deprivation lies in someone being deprived as one and the plaintiffs chosen career argument is, is an opposite because the right to a chosen career means something broader than what he claims, it doesn't necessarily mean the right to practice as a national security lawyer with the security clearance. But but card save it talks about a government action that formally excludes the plaintiff from some category of future contracts or employment and here there's a formal exclusion. So it's not a form of practice that requires a security clearance which this plaintiff has developed over decades. So your honor formal exclusion, you can work on national security cases, you can't work on cases that require him to have a security clearance including cases in which he already has a client. So your honor if that were the case then any, any plaintiff complete around Lee and Egan by claiming that they're a lawyer whose livelihood depends on the security clearance, and I don't think that the right to a chosen career should be read that narrowly. And then the reputation plus isn't terribly irrelevant because the presidential memorandum itself doesn't contain any language about Mr Zaid, and the security clearance revocation is ultimately not a judgment on character. It's just a determination to some other, not just the order itself but some other aspects of how the order was implemented that. Sure, Your Honor, but those comments were made years before the security of the presidential memorandum claim out, and then some of those there's other not not not just by the president himself but there were comments made by others after the fact. So your honor if it's based on a there were comments made after the presidential memorandum was came out, so I don't know how much value there are being the face of the memorandum itself doesn't say anything negative about Mr Zaid. So at that point, the comments that were made were just government officials characterizations of Mr Zaid himself they weren't on the presidential memorandum that took away security clearance which is the document that he's challenging. And then, in terms of the right to counsel. There is no Fifth Amendment right to counsel of your choice which is the type of claim that the plaintiff is making here that obviously is different in the Sixth Amendment but the defendant isn't making a Sixth Amendment claim. So for those reasons we believe one it's not just dishevel, but if we, if it is we went on the merits and then the balance of equities paper us. Thank you counsel we'll give you a little time for rebuttal. So, good afternoon I was checking it was afternoon and morning, and may it please the court on March 22 of 2025 President Trump issued a memorandum directing the agencies named in this suit to quote take all additional actions as necessary and consistent with existing law to revoke any active security clearances of a group of individuals including Mark Zaid. Instead, with what the district court concluded that the government did not meaningfully rebut that the denial of providing Mr Zaid with what it called the usual process was based on his prior work for clients were adverse to the government, and the agencies therefore did no such thing, ignoring not just the policies and procedures to which they were bound under that existing law, but also the protections in three parts of the Bill of Rights, facing the strength and the basically uncontested factual record supporting Mr Zaid's First Amendment due process and right to counsel arguments, the appellates blur, a proper reading of security clearance cases that distinguish between permissible judicial review of procedures and policies and impermissible merits second guessing by courts, and this would as resulting here, turn the clearance process into a blank check for forbidden government retaliation. I'd like to point out that I've heard the court all morning, talk about four cases, and I believe those four cases. Egan Webster Greenberg and Lee provide the basis to determine that Mr Zaid's claims were and are justiciable in the following way, together, they do draw that distinction between what is an attack on what Mr. Egan called the substance, and versus what they call the procedures in which you get to the substantive decision. Egan starts when there was no procedural challenge to what happened to him, leading the court to determine that what Mr. Egan was doing was going right to asking the court to decide on what it called the substance. The Webster case shortly thereafter, introduced the concept of a court looking as to whether there was an individualized review, or whether there was something more like a blanket policy, which this court after the remand made very clear in its decision in Gates, where that distinction between policy and individualized is referenced 41 times, which led them to Greenberg, while it did not address, whether or not the president took action, it did make a very clear statement that a president's action in a security clearance decision would and could be judicially reviewable. And that leads to Lee. And what Lee represents is that by reviewing why Mr. Lee's claims were not justiciable, it demonstrates why Mr. Zaid's are in the following way. Here, there has never been a merits decision. In fact, quite the opposite. In all of the first administration of President Trump, the only thing that's happened is that Mr. Zaid got an increase in his security clearance. Only changed after Mr. Zaid took on the government in representing those adverse to that same president. Can you say there's never been a merits determination? There, there has been a denial of a security clearance, a revocation of a security clearance. There has been a revocation of that's what that's what the president did. And so what do you think needed to happen in order to distinguish it from Lee? Because the, the part of Lee, I'd like your thoughts on is the last part where there's also, and I'm only talking about the first one right now. The last part of Lee specifically deals with the First Amendment retaliation claim and says, like the Fifth Amendment claims, this one also rests on injuries arising from the revocation and challenges its substantive basis. So it too is barred by Egan. What what's the distinction from that with respect to the First Amendment retaliation claim? Let me address your first part of the question and then I'll answer the second. So for Mr. Zaid's case to be the Lee case, the following would have had to happen in Mr. Lee's case. There would have been no notice. There would have been no investigation, no polygraph, no interview, no record, no process, no possibility of appeal. In that case, there would have not have to been an institution of a departure from policy, which I was going to express why in Mr. Zaid's case, there's a fundamental departure from policy as Webster indicates that that is a factor you should consider. And there was no individualized review. But does that does that go to the First Amendment retaliation claim or is that the procedural due process claim? It goes first and foremost, it goes to why it is that Mr. Zaid's claim is justiciable so that I can then address the court on the First Amendment retaliation. But I'm asking which claim are you saying is justiciable with the points you just made? Are you saying that both claims are justiciable? Are you are those those points going to the justiciability of the procedural due process claim? Those factors go to again, I make the distinction because your honor's questions were saying what gets Mr. Zaid into the front door of the courthouse and what gets Mr. Zaid into the front door of the courthouse or what I was going to suggest were things that don't exist in Lee. If you'll forgive me for a second, let me just make sure I make sure the court knows those three things, because, again, looking at Webster and Gates, you have the following. You have a memo, which is in effect stating a new policy by that. It was the president telling the agencies that are charged to do something under existing law. Don't do it. I've already made the decision. Second, in effect, answering Judge Billard's question, it was in effect revoking the executive orders that were in effect in those 13 factors because they were no longer applicable. And in terms of a departure, this is one of your questions earlier in the day. It was that all those cases that we have talked about are when the agency starts the process of determining whether or not the factors apply and then raise it to the point of the president, if necessary. Here was the reverse. By that, I mean none of those cases, not Gates, not Casey, not Rattigan, not any of them have a case in which the president says, I am starting this process and the agencies have to carry it out the way I did. That's what gets us to disability. Once we're in the court to have just disability, then I think the court has to look at all three. Now, of course, on the merits, we can prevail on any of the three, but we have strong legs of that stool on all of those three constitutional claims. And back to Lee, then I want to also point out, maybe this is the answer to Judge Rao's question. But just to that point, I mean, what if the president were to enact an executive order that said, you know, I revoke the other executive orders and their processes, and then he made an individualized revocation decision. So if there was no executive order and he makes an individualized assessment, you'd have to tell me, does he make the individualized assessment as follows? I hereby decide that Mark Zaid does not have a security clearance because I find, or doesn't even say I find, because his security clearance invades the national interest of the United States. If that's what happens, it still doesn't stop us from getting into the court because, again, it's the president doing it, whether he evokes the executive order or not. And then once that has happened, the court... So it's more justiciable because the president makes the determination? No, it's not more... Not more justiciable, but it is more likely to be justiciable because the president makes the determination? If there had been no orders that the president revoked, the president doing it in this fashion still makes it judiciable because of Webster and Gates' determination that if a president does this in a non-individualized process, then I can come into court and say, there's something going on here that the court has the ability to review. It's inconsistent with Lee, which says over and over again that the revocation decision itself is not something that courts can assess, that it's not justiciable, that it's sort of off limits. If the lawsuit is going to the substance of a revocation decision, it's just not for the Article III courts because it's been committed to the executive branch. I don't read Lee to say it the way you said it. I'd like to state what Lee actually said the way I read it, and then maybe I've got it wrong. What the court said is dispute is not non-justiciable simply because it tangentially relates to security clearance. Then we didn't know what tangentially meant, but the court made that clear in the very next sentence when it quotes Greenberg and talks about the justiciability of the methods and process. In this case, methods and process based on a group determination would be something that I could come to court and say, you need to take a closer look. It doesn't matter in that case that the president actually revoked the executive orders because in the context of this case, and I want to point to another important factor of Lee, Lee concludes its decision by quoting Baker and Carr versus Carr. In that phraseology, it asks the court not to ignore what's obvious and look at the structure and context of the situation. In a context and structure of the situation in which the president has made his decision based on what he says it is doesn't make it non-reviewable because Lee also says, of course, not every case touching on national security lies beyond judicial cognizance. I guess in your hypothetical to me, it doesn't depend that the president did it himself. It's still going to be how did he do it himself. That's where some of the cases about the president having this textually committed power is true, but not to the exclusion of all constitutional boundaries. What would the president have to do if the president does make the determination himself and it's targeted at Mr. Zaid and the result is a withdrawal of the security clearance? What do you think the president would have to say in the order in order to make use of the Lee Justice Ability Bar? If the president had or does, again, say I, the president, have for reasons that I have either stated because I have heard something, read something, considered something. I am looking at this person's individualized ability to hold a national security clearance and I do it in that fashion. Then I would still say that I might be able to challenge that that's a stated reason. But if you also said this guy's a sleazeball, he ought to be sued for treason, that he has one of his cabinet secretaries at the same time say, as it was in this case, that this is a person that is used to security clearance for political purposes. Then I could come into court and say, I understand he says this, but in the context that Baker and Carr says I'm allowed to bring to the court's attention. Because if the case says, as Lee quotes that case, context matters. I don't think Lee stands for the proposition that context doesn't matter. So I can at least get here to say, look a little bit further. Once I got here, I might have a harder time to say that consideration was in fact pretextual. That's on the merits, right?  So I'm just asking you, give me the example of the presidential determination as to Mr. Zaid that wouldn't get to the merits. What would the president have to say? That would, I'm sorry, that would still make it justiciable or would prevail on the merits or both? Would render non-justiciable. Oh, what would he have to say? He would have to say words to the effect that without regard to all the collateral context, which undermines what he would say in his order. But if his order had said, I have reviewed the situation of a lawyer named John Doe, or in this case, Mark Zaid. On the basis of having reviewed the material that was put in front of me, I hereby declare that he should not have a security clearance. Then I'm in the position of asking a court to do what it's not allowed to do, which is to look and see what his underlying purpose might have been, or to test whether or not one of those factors was properly. That's where, in Mr. Lee's case, we have an agreement. Think about what. Is the candor the problem? Can you what? The candor of the president's orders and statements? I mean, is that the problem? Not the candor. So in my situation, I'm agreeing with at least the intent of the question in the following way. Maybe I could answer it this way. Consider what Mr. Lee was asking the court to do. Mr. Lee was asking the court to second guess what a blip on a polygraph exam meant. And to then require those that were administering it to go further and determine whether some discriminatory purpose might interpret that blip differently. That's not allowed. That goes to not that he got the process. Indeed, Mr. Lee got all the process that Mr. Zaid did not get. As opposed to Mr. Zaid saying you have the tools, as you've always had, to determine whether or not process do or otherwise, because in this case you get process to get your security clearance revoked, has been achieved or been instituted. So in that instance, the difference between Mr. Lee and Mr. Zaid is what they were both seeking the lower court and now this court to affirm that they did. The president could make the statement, Judge, that you said happened. And if he made it without the context that you could look at, then maybe I'd have a weaker argument. What's the if the context is context that's not on the face of the order? I think you can look out of the. Yes. So my friend says that you can only look at what the president said in his order, which was content neutral. I don't think that's true. So then in the example you gave us of the presidential order that would actually render a claim non justiciable. Would be would be that. But here you have more. But let's just let's just take that situation. I just want to understand the parameters of the argument. So in that situation, what you articulated to us as the kind of presidential language in an executive order that would render a challenge non justiciable. If there were extra order contextual considerations that might afford a basis for making a claim that, hey, it's what he said in the order. But actually, if you look at this other stuff that's outside the order, we've got some pretty solid grounds to say that's actually not what was going on. So is are you saying that as long if there are those kinds of extra order contextual considerations, then there's nothing the president can say in an order that would render his render a challenge to his order non justiciable. I'm not going that far. OK. OK. So how far I am going would start with the possibility. I'm not first of all talking about what the president actually says. But the president saying something could, as it did here. Amount to the Webster Gates departure from an existing policy, existing policy or instituting a new one. So it gives me the ability to say to the court, this is such a departure because it has never happened this way. As I said, every case that I looked at in this brief and coming to court today is a situation in which the process works intended. You have somebody challenging the possibility that somebody should have a security clearance. He gets the review. He gets the process. And then at some point it is revoked. And then somehow, let's say in the Rawls case, a president may have something to do about it thereafter. Wasn't a security clearance case, but it has an analogy. That policy departure, that change allows us to argue that there's something more going on. Then once that happens, I may, as I said, lose once I get into the courtroom. So you have the policy reason. But if the president said only what you said, then I'd have to point out that there was a policy difference itself that provides me the key to the courthouse door. Does it matter? I should try to remember to ask Mr. Conley this question. As Mr. Clement correctly said, it's principally a question for the government. But is it your position that the president is bound by the executive orders so that if he wants to personally take on an exercise of his Article 2 national security powers with respect to a security clearance, he's departing from established policy? If he just says like executive orders, hey, those come from the president and I'm the president and I don't think it applies here. Is that a problem or does he need to announce a revocation or exception from a standing executive order? I thought I heard my friend say that executive orders have a binding effect. What I know about the law... In the executive branch, but on the president? All I know is this. Executive orders are written by the president and they are not revoked automatically when a new president comes in. That's established case law. The president is saying, right, that's for me, the unitary executive, to make sure everyone else is doing what the president wants. And if I think what the former president said was fine and I don't disturb it, then treat that as what I want. But when the president does something in conflict with it, is there any, does that in any way affect or invite judicial review? I think it causes a plaintiff to come into court and say the president has done something that amounts to the kind of policy departure that courts have recognized are not going to be based, as in this case, the facts, an individualized review on a predictive future ability of somebody to hold an individualized assessed security clearance. So if the president wants to do an individualized version, but he's not doing it pursuant to, you know, some named agency person with a set of processes, he says, I'm going to do the process myself, it's going to be fine, it's going to be like that, but I'm going to do it. If he's going to do that, he has to say that he's sidestepping an existing executive order? It's hard to say that. If he says I'm going to do it, and he makes a statement as to what his basis was on, and it doesn't have the contextual issue that I can say that's not really what's going on, then it's the end of the inquiry. What if he's thinking what it's on, and he doesn't want to tell people because it's a threat to the national security, but he's thinking, geez, this person is really, you know, it's not, it's a really serious national security problem, he's selling classified documents to an enemy, I'm not going to announce that, but I'm just going to do it. Well, I don't think if someone were questions earlier that the President is a quick thinker and he has 13 factors in his mind and he did that. I don't think he's bound necessarily by those 13 factors. If he's taking those 13 factors outside by taking away the executive order. What I do think is if you have the context of this particular case with Mr. Zaid, for example, a president's first term deciding he was so trustworthy that they would increase the security clearance to the highest level, and that the intervening acts are only I know you have the retaliatory context but I'm still trying to put that aside and figure out how much your work, just your departure from process factor, how much work that's doing and I'm not sure I'm hearing you say that it's doing any work on its own, apart from the other irregularities. I think they spill over on each other to a certain extent Judge Pillard, because if the departure from a policy is tied to the things that this record shows, for example, the action being taken by a private versus a federal employee, because all those cases are federal employees, the action being taken against a private person was not just a private person, but as an attorney who's using his security clearance to represent and basically support the constitutional rights of all of his clients. If the person is doing it with it being a private person who's an attorney, with whom the record indicates that there was a change as to why his security clearance on its face looks like it can only be as the district court found for a retaliatory purpose, then I'm not relying on standing in the courtroom, solely because he didn't invoke the executive. Can I ask you the question this way? Maybe lease Lee holds that a First Amendment retaliation claim in that case is non justiciable. That's just a holding of the case right and you have you have a First Amendment retaliation claim that you want to be justiciable notwithstanding Lee, and let's assume that's possible. So, if I were going to construct the opinion that said Lee holds a First Amendment retaliation claim non justiciable, but this First Amendment retaliation claim nonetheless is justiciable because what's the because what's the succinct. Mr. Zaid is not coming to court to say I can just assert that I have a retaliation claim. In this case, a much stronger retaliation claim than Mr. Lee did and stating that without any other factor gets us into the court for justiciability. In Mr. Lee's case, he argued at the end of all the things I said he had process. He got all the opportunity to appear. It's an individualized system. It wasn't a departure from policy was actually the implantation of the policy that existed. By the way, I'm here in court because I can also now raise the fact that it's a First Amendment claim to get me into the court. That's not our key. In this case, Mr. Zaid asked to be in court and to ask you to affirm what the district court did because our key to the door of the court was let me tell you what it is not individualized. It is part of a departure of a policy. It is the basis of that that I am asking you now to evaluate my strength of a First Amendment retaliatory claim and my liberty interest claim and my right to counsel claim. It is not it's kind of backwards. Mr. Lee tried to use retaliation as his vehicle. Mr. Zaid doesn't get there until he has a vehicle. You're saying that the problem is that it's not individualized. I'm not sure that the process is not individualized. But don't the official executive order procedures for security clearances authorize the DNI to revoke a clearance without any process if she deems that to be necessary and appropriate? Director of National. Yeah, I heard that part. She can revoke a clearance without going through process if she deems that is necessary. I think. And would that be subject to your same. That would make it justiciable. I think if you're asking me whether an agency head can make a decision in this case herself without determining that there's without applying a process, then I would point to two things. I would point to the Webster case and its remand where you had the most discretion in the hands of the director of the CIA and notwithstanding that, and the government alleging in that case that all agency employment decisions, even those normally repugnant, are given over to the absolute discretion. The court said a constitutional claim based on an individual discharge may be reviewed by the district court in that context. I think that if you're telling me that the DNI person does it outside of that, I would ask my friend to address what in a brief that started in the case, the government pointed out very much that if an agency has a procedure for denying or revoking a clearance, then a court can review whether those procedures were followed. That's what the government said in that case, I would apply it to your hypothetical. If the whole reason for justiciability and getting into the courthouse is the lack of following the procedures or changing the policies then isn't the correct remedy to say that the executive must follow the procedures, not necessarily reinstating the security clearance, which has never previously been done in any case that has been cited, I mean except for these four district court cases, except let's talk about the difference between those four. And our case, we're here at the end of a preliminary injunction, not on the end of the case having been decided the standard review is different as, as of course you know, and that's exactly what Mr. Zia is asking for and is what the district court said should happen. The district court went out of its way, basically to restore the status quo is what preliminary injunctions do, and said nothing stops the executive branch from doing what it should have done in the first place. Make that individualized review, based on a process that occurred even in Lee, and if they had done that, I might not be able to come back in a few months hence and stand at this podium and say something was done wrong. That's a fundamental difference but you've been asking questions about the remedy, and I was glad I can point out why the remedy we're seeking is different in the context in which we're having. So, so you think at the end of this, a permanent injunction that simply said, give Mr Zaid, the appropriate process would be sufficient. I think if we go back to the district court, where we present those claims and also an additional claim that wasn't in the preliminary injunction, addressing for example a bill of attainder claim that we didn't rely on, and we get through all that process in the district court, and we are not able to show after we were properly in the district court that it was retaliatory, and that there was a due process violation, and that there isn't a right to counsel claim that we have, then we won't be able to come back because the process has worked the way it was. It is not the same as my friend says to lump our relief with what happened in the law firms. There are other differences but that's one of the fundamental ones. If your question is, what is the remedy that the court did the remedy said, I am not I am putting this back to the status quo you have your security clearance. And now I am not preventing the government. That's an important point to make sure the courts aware of. For now four months Mr Zaid has operated under that clearance, with no harm to the national security because the government hasn't tried to now institute the process that it should have done in the first place, didn't even ask for a stay. And in the meantime, Mr Zaid has proven what the last 30 years should prove that there was not any decision based on a trustworthy basis for the process to have done, and you don't have to take my word for that, because that's one of the five factual findings of the district court which one of you have pointed out, of which there is no clear error on to justice ability so if the distinction with Lee, is that here unlike in Lee there was not an individualized determination. Lee presupposes an individualized determination so it's not just disability rule is contingent on that. If there was not an individualized determination then the justice ability problem is overcome, does is when you say it's not an individualized determination. Is it based on the notion that the presidential memorandum encompasses more than one individual is lists off several individuals, or is it more than that is, what does it have to be to be the kind of individualized determination that in your view, would render the challenge not justiciable. I think the first part of your question and then I'll try to answer and see whether that finishes the second part. It is not simply that it was in a group, although that it's in a group, or to be a red flag it ought to be a tell it ought to be somebody saying, you should take a harder look what makes those individuals common in that group is something that I believe a court as below should do what made that group common was that they all who the President determined to be either his actual or perceived political adversaries or opponents, or what he calls his enemies. It is that grouping together, that allows us to say there's something going on here which got us into court so that you could still make that exact same point with respect to an individual. And exactly right. So let's assume that there's an individualized determination as to a particular person, but there are contextual considerations that would lead you to think that person is an enemy of the President, the President has tweeted about them countless times. You got to wonder whether really what's going on here is the security clearance is being denied because they really just the President really dislikes this person and finds them to be an enemy, as opposed to the normal stuff. If that happens, if that's the context it's not group it's one individual, but there are contextual clues that would allow somebody to make a claim that the decision is based on something other than what it normally is in the security clearance context it's actually because this person's an enemy. Is that claim justiciable. If again the President says Mr. Zaid security clearance is not in the national interest full stop. And that's all we have in the record and he hasn't done it with anybody else. And he hasn't stated anything other than that, I go back to the building blocks of judicial ability. The first building block is to determine whether or not is doing that is something that departs from the process or policy that this court has said a court can look at in this hypothetical that still would be the case. So you're saying he hasn't given any national security reason or even claimed these basing international security that that's that opens it. Well, in this case, two things judge first to answer I think one of your questions before it is whether there's any magic between the President saying I'm doing this based on national interest versus national security and I think I am informed by judge Howell's decision below that, while national security can be a part of national interest, as my colleague in the other case indicated, every president thinks what they do is in the national interest. And so that should give you a warning sign a red flag to look below whether that is what's going on. So that, again, in this case, slightly different posture and that would that would be enough to render it just a challenge justiciable, not just those two exchange words but those words in the context again of his doing something of, I am going to tell you agencies remember what he said. He almost he didn't really revoke Mr. Zaid's clearance himself. He basically said, I revoke, but I am telling you agencies to take all additional actions consistent with existing law. That's what he said he didn't do what our hypotheticals were saying he basically delegated what should have been the proper process but then he did something else, because you know he did something else because the agency's interpreted his decision just the way we are claiming is unconstitutional, they didn't do that process. They simply said okay we hereby revoke in minutes or days or hours. So it's not simply that now, if he had said that and he didn't delegate the authority to the agencies who didn't violate the who did not follow the existing law, then we're back to the bears bones, and in the bears bones. All I can say that in this context, national interest should have been a warning sign that there's something else going, you then look what else is going. What's going is the change in his clearance process from Trump one to Trump to what you see is the contemporaneous my friend says all those statements are before the process began not true. First, the President announced in the newspapers that he wanted Mr Zaid's clearance revoked, then he had one of his cabinet people make a similar statement and tweeting it out contemporaneous to the process that we are in. That is not necessarily something that you should avoid looking at, in the context of what happened here. Make sure my colleagues and have additional questions for you. Okay, I would like to say one more thing please. I don't know that you need me to address either liberal interest but it is because we talked about this textual delegation. And I'd like to make one other point and anything else you'll ask me. That is, again, that can make this point efficiently please. Sorry, you can make this one point efficiently please. Okay, so what I would like to remind the court in the juxtaposition of Egan Webster and Greenberg and Lee is that lead leaves, all those cases undisturbed, but we're talking about the textual analysis. I do want to leave maybe with the most important thing I could say given the question judge round others asked. And that is the quote, all questions of government are ultimately questions of ends and means but this is the next sentence. The end may be legitimate. Its accomplishment may be entrusted solely to the president. Yet the judiciary still may properly scrutinize the manner in which that objective is to be achieved. If I had to distill down to one sentence, why this case is both judicial and why based on our claims they win on the merits. That would be the sentence. Thank you, counsel. We will give you three minutes for rebuttal. Thank you, Your Honor and I'll be very to the point. So, I think the conversation that your honors had with my colleague on the other side spell how hard it is to separate leave from what's happening here because you're talking about when you can look under the hood, what you can look under. And when you talk about just disability of security clearances in this context, it's ultimately him that Mr Zayda has to demonstrate, even on appeal, and has the burden that he should belong in the courtroom, and the court can conclude if he didn't meet that burden that that alone is a reason to rule for us. I did want to touch briefly on on the national interest versus national security. If the, if the executive order simply swapped out the word interest for security. I don't think that that would make it necessarily turn on whether it's just dishevel or not, because then that goes back to a magic words problem. And given that the executive orders have used the term national interest I don't think that that should be a defining factor one way or the other. Another thing I would point out on the due process issue on j 113 it talks about how these executive orders are only designed to improve the internal management of the executive branch, and is not intended to create any substantive or procedural right against the United States so the process that's there in the executive orders more to manage the executive, not necessarily to find the executive in any way. And then finally, I would say on the procedural due process, the district court in Palmieri cited Dorfman v Brown, which states that a person does not have a liberty interest in their security clearance, and that the right to earn a living does not necessarily extend to jobs requiring one, and a lot of circuits have held that you don't have a liberty interest in security clearances so this court would be creating a circuit split if it did. And if the court does not have any. And finally, I would just make one final point, which is that the plaintiffs position that it was the president rather than agency I don't think given that the textual commitment is to the executive himself. I don't think it makes a difference whether he did it versus an agency, and unless the court has any further. I just want to follow up on one item. Now the official the rebuttal on the second point you're making it gets to a question, Judge Pillar to speed up a few times, which is the, the, the binding or non binding nature of an executive order visa v the president. So if the president issues a determination that isn't in compliance with an executive order. It's the normal understanding will the president issues executive order so doesn't have to comply with an executive order so that the fact that the determination is made outside the auspices of an executive order doesn't itself raise a problem it just shows that the president chose not to. Yes, Your Honor, and the executive orders themselves say that it's not intended to create a procedural right or anything of that sort so by its own terms, I think that your honor is correct that the president can obviously go. It's not bound by what it says in an executive order that he issues. But would he be bound by the substance of the requirements of what needs to be considered. No, Your Honor, we don't believe that it's not just dishevel a question of whether it actually. I don't believe that he would be your honor especially when the doesn't need to say I'm, I'm acting outside of x and so executive or so, so you're standing up here for the United States and saying, there is no such thing as the president acting lawlessly because he acts in contravention of an executive order. That's correct, especially when executive orders in the clearance context say it doesn't create a procedural or substantive right and it's designed purely for the internal management of the executive branch so maybe so that some hypothetical could exist but not in the security clearance context so if we disagree with you that that it's magic words to require something more specific, having to do with national security, and the national interest isn't enough like if someone says the president says, I'm going to go lenient on you and doesn't invoke the pardon power. It seems like it's more than, than magic words to say that, that the president needs to invoke something that is tied to his national security powers when he's talking about, so your honor my our position is Lee doesn't require it to decide the disability issue, it just requires that the decision be made. And, but to the extent that it's tied to, you know, for instance, if national interest was stricken out and replaced with national security and all that, that's all that says, I don't think the plaintiff would say that that's enough so the courts, I don't think can turn it based on just the term alone used and I think that's why it goes back to the broader point that once the decision made, that's what's unreviewable. Thank you. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Pillard; Rao